IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHALID ANDERSON,  :  <br>     Plaintiff,    :  <br>                  :  <br> v.              :   CIVIL ACTION NO. 24-CV-1471 <br>                  :  <br> TERRA, *et al.*,    :  <br>     Defendants.   :  | |

**MEMORANDUM**

**PEREZ, J.**                                                                                    **August 13th, 2024**

    Khalid Anderson, a prisoner confined at SCI Phoenix ("SCIP"), filed a *pro se* civil rights Complaint naming as Defendants SCIP Superintendent Terra, a correctional officer named Jenkins, and grievance coordinator K. Owens. Jenkins is named in her official capacity, and Terra and Owens are named in their individual and official capacities. Anderson seeks leave to proceed *in forma pauperis*. For the following reasons, the request to proceed *in forma pauperis* will be granted and the case will be dismissed on statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.    FACTUAL ALLEGATIONS**[1]

    Anderson asserts that he was assaulted and stabbed by another inmate in the J-B unit dayroom on January 17, 2024. (Compl. at 2.) He was taken to the medical department and then transported to a hospital to treat his injury. (*Id*.) He returned to SCIP on January 18, 2024 and was placed in the Restricted Housing Unit ("RHU"). (*Id*.) He received a disciplinary hearing on January 19 concerning the incident and was sentenced to 30 days of disciplinary confinement in

---

[1] The facts set forth in this Memorandum are taken from Anderson's Complaint (ECF No. 2). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

the RHU.  (*Id*.)  On February 16, he was given a form stating he was being placed on administrative custody ("AC") status.  (*Id*.)

Anderson filed a grievance on January 29, 2024 asserting that Defendant Jenkins failed to protect him from the assault by the other inmate, but received no response.  (*Id*.)  He resubmitted the grievance on February 19, 2024 but this grievance was rejected on the ground that he did not file it within 15 days of the incident and because it contained "UCC references."  (*Id*.)  In the February 19 grievance, Anderson sought money damages and immediate release (presumably from his AC status).  (*Id*.)  His status was reviewed by the Program Review Committee ("PRC") on February 21, 2024 and he was informed that he would remain in the RHU in AC status and eventually transferred to a different institution.  (*Id*.)  The PRC allegedly refused to give him information about how they reached that decision, which Anderson asserts violated his Sixth and Fourteenth Amendment rights.  (*Id*.)

On February 24, he wrote a request to staff directed to the PRC seeking documentation why a transfer to a different institution was necessary, and requesting release back to the general population, but the information was not provided and his request was refused.  (*Id*.)  Between February 16 and March 10, 2024, he wrote to an unidentified unit psychiatrist and was seen due to his alleged mental suffering from the conditions in the RHU.  He asked the psychiatrist to inform Terra and the PRC about his issues, but he "was offered no remedy or help."  (*Id*.)  He also wrote to Terra asserting that he was being unlawfully kept in the RHU.  (*Id*. at 3.)

Anderson asserts that Jenkins failed to protect him from the physical violence he endured and thus was negligent and deliberately indifferent to his safety.  (*Id*.)  He alleges that Jenkins failed to check the unit camera screens at her desk and make sure that the inmate who stabbed him belonged on the unit before opening the sally port to admit him.  (*Id*.)  He asserts that, due to

2

the grievances he filed, Terra was aware that Anderson had been injured, had no prior history of violence, and that there was no legitimate penological reason for his being held in the RHU in AC status after his disciplinary sentence ended. (*Id*. at 2.) He asserts that Terra was thus deliberately indifferent to his due process and equal protection rights for failing to release him to the general population. (*Id*. at 2, 3.) Terra also allegedly violated his Fourteenth Amendment rights because he had knowledge of the PRC's violation of his Sixth Amendment rights when it failed to give him information about why it reached its decisions. (*Id*. at 3.) Anderson asserts that K. Owens acted improperly in rejecting his grievance without considering that he suffered an injury in the inmate-on-inmate incident and that his rights were violated. (*Id*. at 2, 3.) He seeks (1) money damages, (2) a declaration that the Defendants violated his rights, and (3) injunctive relief requiring that he be housed at SCIP in a single cell, and that Jenkins be retrained. (*Id*. at 4-5.)

## II.     STANDARD OF REVIEW

The Court will grant Anderson leave to proceed *in forma pauperis*.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir.

---

[2] Because Anderson is a prisoner, he must still pay the full amount of the filing fee for this case in installments as required by the Prison Litigation Reform Act.

2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Anderson is proceeding *pro se*, the Court construes the allegations of the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F. 3d 239, 245 (3d Cir. 2013)).

Also, when allowing a plaintiff to proceed *in forma pauperis* the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

### III. DISCUSSION

Anderson asserts constitutional violations and state law negligence claims. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

      A.      **Claims for Non-monetary Relief**

Anderson's claims for declaratory and injunctive relief are not proper and will be dismissed with prejudice. Declaratory relief is unavailable to adjudicate past conduct, so Anderson's request for a declaration that the Defendants previously violated his rights is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

The claim for injunctive relief in the form of an order that he be kept at SCIP and housed in a single-inmate cell is also not proper. It is well-settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005)

(holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same). Also, the demand that Jenkins receive employment retraining is not relief the Court can grant for § 1983 claims. *See generally*, *Buskirk v. Pennsylvania Bd. of Prob. & Parole*, No. 22-1826, 2022 WL 4542094, at *2 (E.D. Pa. Sept. 28, 2022) (stating "the Court has no authority to terminate the employment of a state employee") (citing *Teal v. Moody*, No. 15-1402, 2019 WL 6702405, at *1 (M.D. Fla. July 10, 2019) ("[T]o the extent Teal suggests that this Court reprimand the Defendants and/or terminate their employment, this Court does not have the authority to reprimand state employees and/or terminate their employment."). Moreover, Anderson is no longer housed at SCIP, so the named Defendants cannot provide this relief, even if it were appropriate. Accordingly, a request for an injunction mandating that Anderson be moved to the general population or housed in a single cell is not proper.[3] All claims for non-monetary relief are therefore dismissed.

### B.     Official Capacity Claims

Anderson brings § 1983 claims seeking money damages against all Defendants in their official capacities. However, all Defendants are officials of the Commonwealth of Pennsylvania and the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see*

---

[3] For this same reasons and as explained further below, any money damages claim against Terra based on his failure to move Anderson to the general population after his disciplinary sentence ended is also not plausible and will be dismissed.

*also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.[4]

### C. Claims Based on Grievances

Anderson asserts a constitutional claim against K. Owens based on the manner in which she handled his grievances as the SCIP grievance coordinator. This claim is not plausible and will be dismissed with prejudice because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations such as those raised by Anderson predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance

---

[4] To the extent Anderson also raises state law negligence claims against the named Defendants, Eleventh Amendment immunity also precludes negligence claims. *See Brooks v. Beard*, 167 F. App'x 923, 926 (3d Cir. 2006) (*per curiam*) (noting, with regard to inmate's negligence claims, that "the state has expressly retained its Eleventh Amendment immunity for purposes of federal lawsuits.").

procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

### D. Retention in Administrative Custody

Anderson asserts a due process claim against Terra based on his being housed in the RHU in administrative custody after his term of disciplinary custody expired rather than being housed in the general population. Specifically, he asserts that he was held in administrative custody even though Terra was aware, due to grievances Anderson filed, that he had been injured, had no prior history of violence, and that there was no legitimate penological reason for his being held in the RHU in AC status after his disciplinary sentence ended. He also asserts that Terra had knowledge of the PRC's violation of his rights when it failed to give him information about why it reached its decisions.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)); *see also Wolfe v. Pa. Dep't of Corr.*, 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004). In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court shifted the focus of the liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the convicted prisoner. *See id.* at 481. The Court reasoned, *inter alia*, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of a convicted prisoner's sentence. *See id.* at 485.

Accordingly, focusing on the nature of the punishment instead of on the words of any regulation, the Court held that the procedural protections announced in *Wolff v. McDonnell*, 418 U.S. 539 (1974),[5] were inapplicable because discipline in the form of segregated confinement "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *See Sandin*, 515 U.S. at 486. For a convicted prisoner, a deprivation of constitutional import occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See id.* at 484. For example, in *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for thirty days did not deprive the inmate of a protected liberty interest. *See id.*, 515 U.S. at 486. Moreover, "a thorough investigation is not a requirement of due process in the prison disciplinary setting." *Parks v. O'Shaughnessy*, No. 14-1268, 2016 WL 4385869, at *4 (M.D. Pa. May 3, 2016); *see also Moles v. Holt*, 221 F. App'x 92, 96 (3d Cir. 2007) (concluding that "a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation").

To the extent that Terra was personally involved in Anderson being kept in the RHU in AC status for some undisclosed period after his disciplinary term expired, the allegation fails to state a plausible due process claim. Courts have held that this type of confinement does not

---

[5] *Wolff* had previously set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.* at 563-67. In addition, the Supreme Court held that there must be "some evidence" which supports the conclusion of the disciplinary tribunal. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

impose a "severe and atypical" worsening of the conditions of confinement already inherent in incarceration, unless it continues for a prolonged period and, accordingly, it does not require a showing of cause or even a hearing. *See Torres v. Fauver*, 292 F.3d 141, 151-52 (3d Cir. 2002) (holding that disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty interest "[b]ecause disciplinary detention and administrative segregation [are] the sort[s] of confinement that inmates should reasonably anticipate receiving at some point in their incarceration, [and thus a plaintiff's] transfer to less amenable and more restrictive quarters [does] not implicate a liberty interest protected by the Due Process Clause"); *Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997) (holding that an inmate placed in administrative segregation for 15 months without hearing was deprived of no interest protected by Due Process Clause); *see also Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (stating that inmates transferred to a particular management unit "were not subjected to confinement that exceeded the sentences imposed upon them or that otherwise violated the Constitution, and therefore no liberty interest created by the Due Process Clause itself was impinged"); *see also Parks*, 2016 WL 4385869, at *4. Moreover, as Anderson concedes that the PRC did review his status on February 21, 2024, shortly after his period of disciplinary confinement ended, he can state no plausible due process violation arising from a liberty interest in his retention in the RHU in AC status, or based on the lack of due process arising from any liberty interest, even if it lasted through the date he filed this Complaint on April 5, 2024.

### E. Failure to Protect Claim

Anderson asserts a failure to protect claim against Defendant Jenkins.[6] Specifically, he alleges that Jenkins failed to check the unit camera screens at her desk and make sure that the inmate who stabbed Anderson belonged on the unit before opening the sally port to admit him. (Compl. at 3.) This allegation fails to allege a plausible claim.

Prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. To state a plausible failure to protect claim, a prisoner must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm. *See id.*, 511 U.S. at 834; *Hamilton*, 117 F.3d at 746. Deliberate indifference is a subjective standard. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). A prisoner must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety." *Id*. at 135.

---

[6] Although Anderson named Jenkins in her official capacity only, the Court will also analyze the claim as if it were brought against Jenkins in her individual capacity as well since, as discussed earlier, an official capacity claim for money damages is not plausible. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

"[I]t is not sufficient that the official *should have* been aware" of the excessive risk. *Id*. at 125 (emphasis added).

Anderson bases his claim against Jenkins on the sole allegation that she failed to ensure that the inmate who stabbed him belonged on the unit before opening the sally port to admit him. Essentially, he alleges only that Jenkins should have been aware of a risk that inmate posed. This is not sufficient to allege that she acted with deliberate indifference. *Beers-Capitol*, 256 F.3d at 125; *see also*, *Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837)); *Young v. Quinlan*, 960 F.2d 351, 361 (1992) (stating that the phrase "should have known" "[d]oes not refer to a failure to note a risk that would be perceived with the use of ordinary prudence. It connotes something more than a negligent failure to appreciate the risk . . ., though something less than subjective appreciation of that risk."). Accordingly, the claim against Jenkins cannot proceed as pled but the Court will permit Anderson to file an amended complaint if he is able to allege additional facts concerning Jenkins's involvement in this claim.[7]

---

[7] Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any associated negligence claim against Jenkins in her individual capacity. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Anderson's Complaint because his claims are not plausible.  All federal claims except for the failure to protect claim against Defendant Jenkins will be dismissed with prejudice.  His state law claims will be dismissed for lack of subject matter jurisdiction.  Anderson may file an amended complaint to attempt to assert plausible claims against Jenkins.  An appropriate Order with additional information about amendment will be entered separately.

                                                                    **BY THE COURT:**

                                                                    **MIA R. PEREZ, J.**

---

imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Anderson does not allege the citizenship of the parties.  Rather, he provides only a Pennsylvania address at SCIP for himself and asserts that the Defendants are employed at SCIP, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens.  Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue against Jenkins.