IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHALID ANDERSON,<br>    Plaintiff, | :<br>:<br>: |
| v. | : CIVIL ACTION NO. 24-CV-1471 |
| C.O. JENKINS, *et al.*,<br>    Defendants. | :<br>:<br>: |

MEMORANDUM

**PEREZ, J.**                                                                                               **March 14, 2025**

Presently before the Court is a Motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants C.O. Jenkins and C.O. Calloway to dismiss the Amended Complaint filed by Khalid Anderson, in which Anderson asserts constitutional claims based on events that happened while he was confined at SCI Phoenix. (ECF No. 26.) Anderson has filed a Response to the Motion. (ECF No. 30.) For the following reasons, the Motion to Dismiss will be denied.

**I.    FACTUAL ALLEGATIONS**[1]

On January 17, 2024, Anderson was in the dayroom of J/B Unit of SCI Phoenix conversing with other inmates when inmate Rashad Washington, who was housed on the other side of the prison, approached and greeted him. (Am. Compl. ¶¶ 10-11.) After speaking with the group of inmates, Washington attacked Anderson with a "makeshift knife." (*Id.* ¶¶ 12-13.) Washington stabbed Anderson in the head, chest, and arms for roughly five minutes, while Defendant Jenkins allegedly "looked on" before eventually opening a door to allow in a sergeant who came to Anderson's aid. (*Id.* ¶¶ 14-18.) After the fight, Anderson was taken to the medical

---

[1] The facts set forth in this Memorandum are taken from Anderson's Amended Complaint (ECF No. 18). The Court adopts the pagination assigned to all *pro se* pleadings by the CM/ECF docketing system.

unit for stitches and then confined in the Restricted Housing Unit ("RHU"), where he learned that Washington had a romantic relationship with a prisoner known as "Fats", whom Anderson was previously suspected of assaulting. (*Id*. ¶¶ 19-21.) Anderson claims that Defendant Calloway initiated a cell move of Washington so that he could be near Fats. (*Id*. ¶ 22.) Defendant Calloway also assisted with and read an exchange of letters and notes between Washington and Fats, one of which indicated that Washington would retaliate against Anderson for his suspected assault of Fats. (*Id*. ¶¶ 23-24.)

Anderson alleges that he filed a timely inmate grievance on January 29, 2024, but when he did not receive a response, he filed a second grievance. (*Id*. ¶¶ 25-26.) Anderson's second grievance was rejected on February 23, 2024, on the basis that it was not submitted within fifteen days of the alleged incident and because it contained references to the Uniform Commercial Code. (*Id*. ¶ 27.) Anderson requested from the RHU officers the form "to appeal to final review" but his request was denied as they were "out of the forms." (*Id*. ¶ 28.) Anderson seeks money damages for violations of his constitutional rights.[2] (*Id*. at 6-7.)

## II.   STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

---

[2] Anderson cites the Eighth and Fourteenth Amendments. While the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees, the Eighth Amendment governs claims by convicted inmates. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Thus, Anderson's claim properly sound under the Eighth Amendment.

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up) *abrogation on other grounds recognized in Fisher v. Hollingsworth*, No. 22-2846, 2024 WL 3820969 (3d Cir. Aug. 15, 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally). "The presence of an affirmative defense does not automatically create a triable issue of fact, but when an affirmative defense is 'apparent on the face of a complaint', it may be appropriate for a court to dismiss an action pursuant to a Rule 12(b)(6)

3

motion." *Dragotta v. W. View Sav. Bank*, 395 F. App'x 828, 830 (3d Cir. 2010) (quoting *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997).

## III.   DISCUSSION

### A.   The Parties' Arguments

In their Motion, Jenkins and Calloway argue that Anderson's claims must be dismissed because he failed to exhaust his prison administrative remedies. They assert that where, as here, the grievable incident is directly related to a misconduct charge, the proper avenue for exhaustion is DC-ADM 801, the Pennsylvania Department of Corrections disciplinary procedure. (Def. Mem. at 7-8.) They argue further that, where an incident is directly related to a misconduct charge, a grievance filed under DC-ADM 804, the DOC grievance policy, is specifically forbidden. (*Id*. at 7.) They contend that Anderson failed to exhaust his administrative remedies under DC-ADM 801 because (1) after he was found guilty of the misconduct charges, he appealed only the loss of job portion of the punishment he received to the SCI Phoenix Program Review Committee, and (2) failed to file any further appeal thereafter to the Chief Hearing Examiner. (*Id*. at 7-8.)

Alternatively, they argue that even if DC-ADM 804's procedures applied, Anderson failed to exhaust his remedies under that scheme. (*Id*. at 8-9.) While Jenkins and Calloway acknowledge Anderson's allegation that he submitted a grievance on January 29, 2024, for which Anderson alleges he received no response causing him to refile it on February 29, 2024, they argue that (1) he failed to provide a control number or provide a copy of the January 29 submission in his Complaint, (2) internal DOC records fail to show that a grievance was submitted at that time, and (3) the February 29 submission was properly dismissed as untimely. (*Id*. at 8-9.) They add that the finding that the February 29 grievance was untimely was never

4

fully appealed under the procedures established by DC-ADM 804, meaning that the grievance is unexhausted.[3] (*Id*. at 9.) They do not address Anderson's allegation that he could not appeal because officials on the RHU were out of appeal forms.

Anderson asserts in his Response that, as he alleged in his Amended Complaint, he submitted a grievance, apparently pursuant to DC-ADM 804, on January 20 "that went unanswered," prompting him to resubmit it.[4] (Response at 5.) He argues that his first attempt to grieve the incident satisfies the exhaustion requirement because the institution's failure to respond rendered the grievance process unavailable to him. (*Id*. at 5-7.) He also argues that he exhausted his remedies when the prison failed to respond to his properly submitted grievance in a timely fashion. (*Id*. at 8 (citing *Shifflett v. Korszniak*, 934 F. 3d 356, 359 (3d Cir. 2019).) He does not address the Defendants' other argument that he failed to exhaust his remedies because he failed to fully appeal his disciplinary charge pursuant to DC-ADM 801.

B.   **The Exhaustion Requirement**

In cases governed by the PLRA, courts must address whether the prisoner-plaintiff has substantially "complet[ed] the administrative review process in accordance with the applicable procedural rules." *Downey v. Pa. Dep't of Corr*., 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), *see also Rinaldi v. United States*, 904 F.3d 257, 265

---

[3] Appended to the Defendants' Motion are, *inter alia*, Declarations of prison officials attesting that Anderson did not appeal the misconduct hearing decision through the entire process required by DC-ADM 801 (ECF No. 26-1 at 4), and he only submitted grievances under DC-ADM 804 on February 19, 2024 and February 29, 2024, which were both denied as untimely (ECF No. 26-4 at 3).

[4] Although he states in the Response that the first grievance was filed on January 20, 2024, Anderson alleged in the Complaint that it was filed on January 29. The Court notes that the one of the pages Defendants attached by their Motion recites Anderson's claim to have filed it on the January 20 date. (ECF No. 26-7.)

(3d Cir. 2018); *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000) ("[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial."). These procedural rules are supplied by the individual prisons. *Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *see also Smith v. Sec'y of Pa. Dep't of Corr.*, 747 F. App'x 101, 103 (3d Cir. 2018) (stating that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of the grievance system at his institution); *Booth v. Churner*, 206 F.3d 289, 299 (3d Cir. 2000) (explaining that a plaintiff must follow each of the steps to exhaust his administrative remedies under the PLRA). "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Downey*, 968 F.3d at 305 (citing *Shifflet*, 934 F.3d at 367 ("[W]e hold that [the PLRA] requires strict compliance by prison officials with their own policies.")).

"There is one exception to the mandatory exhaustion requirement: administrative remedies must be available to the prisoner." *Downey*, 968 F.3d at 305 (citing *Ross v. Blake*, 578 U.S. 632 (2016)). "An administrative remedy is unavailable when it 'operates as a simple dead-end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id*. (quoting *Shifflett*, 934 F.3d at 365); *Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020). But "[w]hen an administrative process is susceptible [to] multiple reasonable interpretations, . . . the inmate should err on the side of exhaustion." *Ross*, 578 U.S. at 644.

"Exhaustion is . . . a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, . . . it constitutes a threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." *Rinaldi*, 904 F.3d at 265 (emphasis in original, internal quotations omitted). Accordingly, in cases governed by the PLRA, courts must address whether the prisoner-plaintiff has substantially complied with the prison's specific grievance procedures and determine whether those procedures were "available" to the inmate. *Rinaldi*, 904 F.3d at 265; *Nyhuis*, 204 F.3d at 77-78 ("[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial.").

"Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) (reversing in part grant of summary judgment to defendants on exhaustion issue; internal citations omitted). However, "where a defendant moves to dismiss based on a failure-to-exhaust defense and the exhaustion issue turns on indisputably authentic documents related to the inmate's grievances, [a court] may consider those documents without converting a motion to dismiss to a motion for summary judgment." *Rinaldi*, 904 F.3d at 261 n.1 (internal quotations and alterations omitted); *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004) ("Given that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment.").

**C.    Analysis**

Jenkins and Calloway argue that where an allegedly grievable incident directly relates to a disciplinary proceeding, DC-ADM 801 is the required procedure an inmate must follow to exhaust his institutional remedies. (Def. Mem. at 7.) They assert that Anderson failed to exhaust

7

his administrative remedies under DC-ADM 801 because (1) after he was found guilty of the misconduct charges, he appealed only the loss of job portion of the punishment he received to the SCI Phoenix Program Review Committee, and (2) failed to file any further appeal thereafter to the Chief Hearing Examiner. (*Id*. at 7-8.)

The United States Court of Appeals for the Third Circuit has recognized that "the inmate grievance process [under DC-ADM 804] and the inmate discipline process [under DC-ADM 801] are two separate tracks, the mixing of which is specifically forbidden: 'A grievance directly related to a specific inmate misconduct charge . . . will not be addressed through the Inmate Grievance System and must be addressed through Department policy DC–ADM 801, "Inmate Discipline."'" *Howard v. Chatcavage*, 570 F. App'x 117, 119 (3d Cir. 2014) (quoting DC-ADM 804 and citing DOC Inmate Grievance System Procedures Manual at § 1.A.7). Conversely, where the grievable incident is not related the disciplinary process the procedure in DC-ADM 804 still governs. *Robinson v. Southers*, No. 13-1603, 2020 WL 9886298, at *8 (M.D. Pa. Apr. 2, 2020), *report and recommendation adopted as modified*, 2021 WL 2270677 (M.D. Pa. June 3, 2021) (applying *Howard* to hold that "an inmate may not take up a grievance through the appeals track for a misconduct citation"); *see also Africa v. Dukes*, 492 F. App'x 251, 253 (3d Cir. 2012) (holding in a pre-*Howard* decision that DC-ADM 801 was not the appropriate exhaustion procedure where the prisoner's Eighth Amendment failure to protect claim was not related to a misconduct charge for fighting where the alleged failure to protect conduct preceded the fight); *Hinton v. Mark*, No. 10-305, 2017 WL 4342204, at *1, 7 (W.D. Pa. Sept. 29, 2017) (stating in a pre-*Howard* decision that DC-ADM 804 was the necessary exhaustion procedure for an inmate who received a misconduct related to a suicide attempt and then filed an Eighth Amendment deliberate indifference to serious medical needs claim regarding prison officials' conduct that

preceded the attempt); *see also Stockton v. Commonwealth Dep't of Corr*., No. 2350 C.D. 2015, 2016 WL 4445456, at *7 (Pa. Commw. Ct. Aug. 23, 2016) ("Stockton's misconduct appeal did not constitute an exhaustion of administrative remedies for a 'failure to protect' claim. This conclusion is the same as that reached by the Third Circuit in [*Howard*], a decision properly relied on by the trial court here. Stockton did not give DOC the opportunity to correct any errors before he commenced suit.").

Anderson's Eighth Amendment claim against Jenkins focuses on his failure to prevent or stop the attack by inmate Washington. Specifically, he alleges that Jenkins improperly failed to stop Washington from coming into an area where was he not authorized to be and then stood by and did not seek assistance for several minutes as the knife attack happened, demonstrating deliberate indifference to his safety. The actions of Calloway concern his assisting inmate Washington to plan the attack by facilitating Washington's cell change so that he could be near Fats, and that he knew an attack could happen since he had read an exchange of letters and notes between Washington and Fats, one of which indicated that Washington would retaliate against Anderson for his suspected assault of Fats. (Am. Compl. ¶¶ 23-24.) The misconduct report concerned the stabbing itself, charging Anderson with initiating the fight by throwing closed fist strikes toward Washington's head and refusing to obey orders to stop fighting. (ECF No. 26-2.) Accepting as true the allegations in the Amended Complaint, Jenkins's failure to prevent Washington from entering the J/B Unit and Calloway's alleged assisting Washington cannot be said to relate to the disciplinary charges since these acts preceded the incident for which Anderson was disciplined. Accordingly, the disciplinary process of DC-ADM 801 was not the appropriate avenue to exhaust these claims. *Accord Africa*, 492 F. App'x at 253 (DC-ADM 801 was not the appropriate exhaustion procedure where the prisoner's Eighth Amendment failure to

protect claim was not related to a misconduct charge for fighting where the alleged failure to protect conduct preceded the fight); *Hinton*, 2017 WL 4342204, at *1, 7 (DC-ADM 804 procedures applied where deliberate indifference claim involved conduct which preceded the misconduct event).

Defendants' alternative argument that Anderson failed to properly exhaust his claims using DC-ADM 804 procedures must also be rejected. Accepting as true Anderson's allegation that prison officials ignored his initial timely attempt on January 20, 2024 to file a grievance while housed in the RHU – leading him to attempt to refile his grievance out of time – and that he was also denied access to appeal forms, raises the plausible inference that he attempted to comply with the procedures, but his use of the administrative remedies were thwarted by prison officials making them unavailable to him. *See Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) ("[W]e hold that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement."). Whether Anderson had administrative remedies available, including whether he in fact filed an earlier grievance that was ignored, therefore involves a factual inquiry that cannot be determined at this time since, even considering the documents Defendants attached to their Motion, they do not necessarily refute Anderson's contention that he filed or attempted to file his grievance on January 20, 2024 but received no response. *Small*, 728 F.3d at 273 ("There is no dispute, however, that there was no decision as to either of those grievances. . . . [W]e disagree with the [District] Court that substantial compliance with [prison] procedures requires appealing non-decisions. [The] procedures discuss only the appeal of a decision with which the inmate is not satisfied, and do not mention what must or even could be done by the inmate when a decision

is never made"). Accordingly, the Court will defer to a later stage of the litigation the issue of whether Anderson substantially complied with available exhaustion procedures.

IV.     **CONCLUSION**

For the foregoing reasons, Defendant Jenkins's and Calloway's Motion to dismiss Anderson's Complaint is denied. An appropriate order follows directing the Defendants to file an answer to the Amended Complaint.

BY THE COURT:

_____
**HON. MIA R. PEREZ**