IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KHALID ANDERSON,** *Plaintiff,* | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **NO. 24-1471** |
| | : | |
| **C.O. JENKINS,** ***et al.*****,** *Defendants.* | : | |

**MEMORANDUM OPINION**

**HON. JOSÉ RAÚL ARTEAGA** **October 20, 2026**
**United States Magistrate Judge**[1]

Plaintiff Khalid Anderson, a self-represented inmate at State Correctional Institution Frackville brings this action against Defendants Corrections Officer Jenkins and Corrections Officer Calloway pursuant to 42 U.S.C. § 1983 seeking damages for events that allegedly occurred while he was confined at State Correctional Institution Phoenix. (*See* ECF 18.) Defendants move for summary judgment (ECF 63), and the Court grants their Motion for the following reasons.

## I. BACKGROUND

On January 17, 2024, Anderson was in SCI Phoenix's Westside J/B Unit when another inmate, Rashad Washington, attacked him with a makeshift knife. (ECF 64, ¶ 1; *see also* ECF 18, ¶ 10-11, 13.) C.O. Jenkins reported that the weapon used appeared to be

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (See ECF 44; *see also* ECF 52 (denying Anderson's Motion seeking to withdraw his consent to proceed before a magistrate judge).)

a "piece of metal with white cloth (sharpened point)." (ECF 64-4 (Defs.' Ex. D) at 2.) The incident was captured on two time-stamped videos (without audio).[2] (ECF 64-2 (Defs.' Ex. B (January 17, 2024 Video 0001490)); ECF 64-3 (Defs.' Ex. C (January 17, 2024 Video 0001491)).) Washington approached Anderson and struck him at 7:44:08 p.m. (*See* ECF 64-2, 19:44:08.)

By no later than 7:44:19 p.m., C.O. Jenkins, sitting at a control desk in the unit, had released the vestibule door to let Sergeant Paul (another corrections officer) enter the area to assist with the altercation. (*See* ECF 64-3, 19:44:19.) The video illustrates that—as soon as Sergeant Paul entered—C.O. Jenkins rose from her chair, undertook efforts to keep other inmates out of the interaction between Anderson and Washington, and continued to do so until the unit settled down. (*See id.*) Upon entry, Sergeant Paul notified West Control regarding the altercation and ordered the inmates to stop. (ECF 64-1 (Def.'s Ex.

---

[2] Anderson states that the videos' authenticity and accuracy are "in question," but provides no evidence sufficient to raise any question regarding their content. (ECF 69 at ¶ 12.) Ideally, Defendants would have filed an appropriate affidavit or other proof with their video exhibits to establish their authenticity. Nevertheless, for purposes of considering Defendants' Motion, the "appearance, contents, substance, internal patterns, [and] other distinctive characteristics of the" videos suffice to show that they are recordings of the events in question. Fed. R. Evid. 901(b)(4). Anderson's unsupported assertion that the videos are neither authentic nor accurate is not enough on its own to defeat summary judgment. *See Sechler v. Thomas*, No. 22-3, 2023 WL 5750506, at *2 (W.D. Pa. Sept. 6, 2023) (granting summary judgment after reviewing the defendant's video evidence despite the plaintiff's assertion that it had been "edited" and explaining that if the plaintiff had "an alternative video record or a credible story how the video record could be 'edited' . . . and how that differs from the copy" that the defendant had provided, the plaintiff could submit that information in a timely motion under Fed. R. Civ. P. 59"). As the nonmoving party, Anderson cannot avoid summary judgment by claiming some "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586.

A) at 3.) Washington and Anderson did not disengage, and a third inmate entered the altercation. (*Id.*) C.O. Jenkins reported that additional staff arrived to assist in the unit at 7:45 p.m. (ECF 64-4 at 2.) Video confirms that more staff began to arrive by no later than 7:45:28 p.m. (*See* ECF 64-3, 19:45:28.)

As Washington fled the scene, prison staff pursued him right away. (*See* ECF 64-2, 19:45:34.) And others secured Anderson in handcuffs at 7:45:55, less than two minutes after Washington struck him. (*Id.* at 19:45:55.) At that point, Anderson was taken directly to SCI Phoenix's medical department where he was referred for emergency care due to a "more than superficial" wound. (*See* ECF 64-5 (Defs.' Ex. E) at 1-3.) His prison medical record states that he required "further treatment due to multiple lacerations to his head, hands, and possible head trauma." (*Id.* at 3.) Emergency department personnel were called at 8:36 p.m. and Anderson was transported to Einstein Montgomery hospital for further treatment. (*Id.* at 3-4.)

At his deposition, Anderson testified that this interaction with Washington was both the first and last time that the two of them were in the same place. (ECF 64-6 (Defs.' Ex. F) at 27:2-5, 41:17-22.) Anderson also testified that, to his knowledge, there had never been a separation agreement in place between them. (*Id.* at 41:9-11.)

Following the altercation, Anderson was placed in the Restricted Housing Unit ("RHU") where he says he learned that Washington had a romantic relationship with an inmate known as "Fats." (ECF 64, ¶ 3; ECF 18, ¶ 21.) At his deposition, Anderson testified that it was his understanding that "Fats" and Washington had both been in the RHU and that C.O. Calloway was exchanging letters for them while they were there. (ECF 64-6 at

33:4-9.) Anderson testified that C.O. Calloway knew that Washington was going to attack Anderson because, three or four days after the incident, when Anderson was in the RHU, Calloway said to Anderson that Washington and "Fats" were lovers. (*Id.* at 29:14-30:4.) Anderson testified that Calloway told him that either Washington or "Fats" had, at some point, passed Calloway a note which said something to the effect of "if you stabbed [Anderson] they're going to transfer" Anderson and "keep" Washington or "Fats"—whoever had not written the note—"at SCI Phoenix." (*Id.* at 29:14-30:15; *see also id.* at 31:1-5 ("Calloway said he be reading the letters and they lovers. And he told them, if you stabbed Khalid they will keep his lover at SCI Phoenix and they going to transfer me.").) Anderson also testified that Calloway said that he did not know that the note that he had read was talking about Anderson. (*Id.* at 29:24-30:2, 30:20-25.)

Although in his Amended Complaint, Anderson alleged that he previously had been investigated for assaulting "Fats" (ECF 18, ¶ 21), at his deposition Anderson denied that he had ever assaulted "Fats." (*Id.* at 27:7.) He also testified that he had no idea why Washington wanted to attack him. (*Id.*)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (citation modified). A dispute is *genuine* if the "evidence is such that a reasonable jury could return

a verdict for the nonmoving party," and a fact is *material* if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

In determining whether a genuine issue of material exists such that a case should proceed before a jury, the Court is "required to view the facts and draw *reasonable* inferences" in favor of the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it," a limited exception applies and the Court "should not adopt that version of the facts" in deciding whether to grant or deny summary judgment.[3] *Id.* at 380.

Because Defendants seek summary judgment in their favor, they bear the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation modified); *see also id.* at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.").

If Defendants' burden is met, it becomes Anderson's burden to offer "specific facts showing that there is a genuine issue for trial." *Id.* at 324. He cannot defeat summary judgment with "[t]he mere existence of a scintilla of evidence" to support his claims.

[3] Video footage *may* establish this limited exception, although "not all video footage or mechanical depictions will allow a court to disregard the non-movant's version of the events." *Millbrook v. United States*, No. 15-0832, 2016 WL 4734658, at *9 (M.D. Pa. Sept. 12, 2016). "[W]here a videotape or other mechanical depiction does not capture the whole incident or where the videotape or mechanical depiction is susceptible to multiple *reasonable* interpretations," the exception may not apply. *Coit v. Garman*, No. 17-1438, 2019 WL 2612703, at *12 (M.D. Pa. June 26, 2019) (citation modified), *aff'd*, 812 F. App'x 83 (3d Cir. 2020). As is further set forth in this opinion, that is not the case here.

*Anderson*, 477 U.S. at 252; *see also Matsushita*, 475 U.S. at 586 (holding a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "Evidence that is merely colorable or not significantly probative is insufficient to create a genuine issue of material fact for trial." *West v. Lincoln Benefit Life Co.*, 509 F.3d 160, 172 (3d Cir. 2007) (citations omitted). For his claims to proceed before a jury, more than "unsupported assertions, conclusory allegations, or mere suspicions" are required. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (a nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). "[T]here must be evidence on which the jury could *reasonably* find for" him. *Anderson*, 477 U.S. at 252 (emphasis added).

Incarcerated *pro se* litigants like Anderson must follow "the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013). Thus, to withstand summary judgment, it remains Anderson's burden—not the Court's—to identify sufficient facts in the record to show that a genuine issue remains for trial. *See Gannaway v. Prime Care Med., Inc.*, 150 F. Supp. 3d 511, 524 (E.D. Pa. 2015), *aff'd sub nom*. *Gannaway v. Prime Care Med., Inc.*, 652 F. App'x 91 (3d Cir. 2016); *see also Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) ("On a motion for summary judgment, a *pro se* plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment.") (citation modified).

## III. DISCUSSION

The Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833. (1994) (citation modified). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. The alleged deprivation of constitutional rights "must be, objectively, sufficiently serious." *Id.* And, relevant here, Eighth Amendment liability "requires consciousness of a risk." *Id.* at 840. So, to establish his claims against Defendants, Anderson must show that C.O. Jenkins and C.O. Calloway "acted or failed to act despite [their] knowledge of a substantial risk of serious harm." *Id.* at 842. "[E]vidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented[4], or expressly noted by prison officials in the past" combined with circumstances suggesting that a defendant "had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the [defendant] had actual knowledge of the risk." *Id.* at 842-43. However, it is not enough to show that Defendants "*should* have known of the risk." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (emphasis

[4] Acosta's signed and dated declaration is the equivalent of an affidavit for purposes of considering Defendants' Motion. *See* Fed. R. Civ. P. 56(c)(4) and Commentary to 2010 Amendments; *Parkell v. Danberg*, 833 F.3d 313, 320 n.2 (3d Cir. 2016) ("Because [statements] were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to statements in an affidavit.").

added, citation omitted), *abrogated on other grounds as recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024).

To avoid liability, Defendants can show "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844. And, even if they knew of a substantial risk, they "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* "[P]rison officials who act *reasonably* cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 845 (emphasis added). "A corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation . . . if the corrections officer had a *reasonable* opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (emphasis added).

**A. Anderson's Claims Against C.O. Jenkins**

Anderson claims that C.O. Jenkins knew or should have known that allowing Washington to enter the Westside J/B Unit created a substantial risk of danger and serious bodily harm to Anderson in violation of his constitutional rights. (ECF 18, ¶¶ 30-32.) He also maintains that C.O. Jenkins failed to intervene in the altercation in "deliberate indifference" to Anderson's "life, safety and well being." (ECF 18, ¶¶ 33-34.) Defendants argue that summary judgment is warranted with respect to Anderson's claims against C.O. Jenkins because there is no question that Anderson had *no* history with Washington

at the time of the attack and C.O. Jenkins immediately acted when Anderson was assaulted. (ECF 63 at 3-10.)

As evidence in support of his claims against C.O. Jenkins, Anderson points to his own sworn affidavit, which is signed and notarized. (ECF 68 at ECF p. 12-13 (Pl.'s Ex. A.).) In it, Anderson states that when Washington attacked him, "C.O. Jenkins just stood there watching" and continued "standing there watching" while he tried to defend himself. (*Id.* at ECF p. 12.) He complains that Jenkins never gave a verbal order to Washington and never used "pepper spray to stop him even though she was wearing a pepper spray canister." (*Id.*) He asserts that C.O. Jenkins "just stood there while [he] was being stabbed" while "[t]he attack continued for approximately five (5) minutes until other officers arrived." (*Id.*) In response to Defendant's Motion, Anderson contends that he "has never alleged that [C.O.] Jenkins failed to prevent the *assault* on" him, but maintains that it was C.O. Jenkins' duty to "at least order Washington to stop." (ECF 68 at ECF p. 4, 8.) Anderson asserts that "despite what the video shows . . . there are multiple genuine issues of material fact that are clearly in dispute." (ECF 68 at ECF p. 8.) There are not.

Viewing the evidence—including the video evidence—in the light most favorable to Anderson, a reasonable jury could not conclude that C.O. Jenkins knew of, or consciously disregarded, an excessive risk to Anderson. Anderson's own testimony that the day of the assault was the first and last time that he interacted with Washington leaves no material question as to whether Jenkins knew that Washington posed a substantial risk of serious harm to Anderson. She did not. Anderson has not met his burden to

produce any other reliable evidence to show otherwise. His own self-serving testimony is not enough. *See Spiggle v. Lefebvre,* No. 18-1136, 2022 WL 3567618, at *7 (M.D. Pa. Aug. 18, 2022) (granting summary judgment on the plaintiff's claim that a defendant failed to protect him from another inmate's attack where there was no evidence that the defendant had any actual knowledge of a prior confrontation between the inmates or that the attacking inmate "had a pervasive history of violence or any specific aggression towards" the plaintiff).

Moreover, a reasonable jury could not conclude that C.O. Jenkins had a reasonable opportunity to intervene in the events at issue and simply refused to do so. Anderson supports his Response to Defendant's Motion with a Pennsylvania Department of Corrections policy authorizing the use of force against an inmate "when the acting staff member *reasonably* believes such use of force is *necessary* to" protect oneself or others. (*See* ECF 68 at ECF p. 15-16 (Pl.'s Ex. B., Excerpt from Pennsylvania Department of Corrections Policy DC-ADM 201 (Effective Date Jan. 20, 2010) (emphasis added).) In his affidavit, he complains that C.O. Jenkins did not give a verbal order to Washington or use pepper spray to stop him even though she was equipped with a pepper spray canister. (ECF 68 at ECF p. 12.) A review of the video surveillance and other evidence clearly refutes Anderson's claim that C.O. Jenkins violated his Eighth Amendment rights by failing to intervene in Washington's attack. The video leaves no question that Washington began to assault Anderson before C.O. Jenkins had any realistic or reasonable opportunity to intervene. While C.O. Jenkins did not directly intervene in the interaction between Anderson and Washington, there is no dispute that she acknowledged the attack and

undertook steps to prevent matters from escalating elsewhere in the unit as soon as she saw that Sergeant Paul was intervening between Anderson and Washington. It cannot be said that C.O. Jenkins "refused" to intervene. *See Goines v. Ogle*, No. 24-2155, 2026 WL 184278, at *7 (M.D. Pa. Jan. 23, 2026) (granting summary judgment in favor of the defendants on the plaintiff's claim of failure to intervene where the plaintiff did not set forth any evidence to show that the defendants had a realistic and reasonable opportunity to intervene in an assault that lasted approximately two minutes), *aff'd*, No. 26-1354, 2026 WL 2199480 (3d Cir. July 30, 2026); *Spiggle*, 2022 WL 3567618, at *7 (finding the plaintiff had not shown there was a genuine issue of material fact about whether a defendant acted with deliberate indifference where a review of video evidence showed that, "at no point from the beginning of the attack to the end did [the defendant] appear to stall in order to allow [an inmate] to continue attacking" the plaintiff).

Moreover, Anderson has not set forth "any evidence from which a reasonable factfinder could conclude or even infer that an earlier intervention by [C.O. Jenkins] would have made any difference in the outcome of [Washington's] attack." *Muniz v. City of Phila.*, No. 21-2762, 2023 WL 6391691, at *6 (E.D. Pa. Sept. 29, 2023). Under the circumstances, Anderson has not shown that his claims against C.O. Jenkins should proceed to trial.

**B. Anderson's Claims Against C.O. Calloway**

Anderson contends that he has evidence "demonstrably proving" that C.O. Calloway "provoked" Washington's attack on him and complains that Defendants' evidence lacks "any formal denial from Defendant Calloway." (ECF 68 at 8-9.)

Defendants argue that Anderson only presents an "unsupported allegation" against C.O. Calloway and that, without more, Anderson has not shown there is a genuine dispute of material fact which would allow a reasonable jury to conclude that C.O. Calloway's actions or inactions gave rise to a violation of Anderson's constitutional rights. Defendants maintain that Anderson "has produced no evidence to" show that he had a conversation with C.O. Calloway or "that Calloway would risk potentially receiving discipline by passing notes back-and-forth between inmates and telling Washington that if he stabbed [Anderson] the prison would transfer [Anderson]." (ECF 63 at 11.)

In his Response to Defendants' Motion, as evidence in support of his claims against C.O. Calloway, Anderson points to Michael Acosta's unsworn declaration, signed on November 6, 2025 under penalty of perjury consistent with the requirements of 28 U.S.C. § 1746. (ECF 68 at 18-19.) In it, Acosta states that in November 2023, while he was housed in the Restricted Housing Unit at SCI Phoenix, he observed C.O. Calloway passing books and letters back and forth between "Fatz" and Washington on numerous occasions and that she would read the letters before passing them back and forth. (*Id.* at ¶¶ 3-4.) Acosta states that C.O. Calloway told him that "Fatz Husband"—presumably Washington—"wrote to Fatz stating [sic] he is going to stabe [sic] 'Dudda' aka Khalid Anderson GJ3105 . . . ." (*Id.* ¶ 5.) At Anderson's deposition, Anderson testified that Calloway told him essentially the same thing while Anderson was in the RHU three or four days after the attack. (ECF 64-6 at 29:14-32:18.)

Anderson cannot defeat summary judgment by relying only on his own testimony. *See Brown v. Smith*, No. 21-3127, 2022 WL 2383609, at *2 (3d Cir. July 1, 2022) (holding the

plaintiff's "conclusory, self-serving testimony was insufficient to create a genuine issue of material fact"); *Rochester v. Warden of SCI Benner,* No. 17-1220, 2018 WL 3536730, at *6 (M.D. Pa. July 23, 2018) ("[T]his Court is not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question.") (citation modified). So, the question is whether Acosta's affidavit is sufficient, without more, to create a genuine issue of material fact regarding Anderson's claims against C.O. Calloway. It is not.

Acosta's statement regarding what Washington told "Fatz" in the letters that C.O. Calloway read is inadmissible under the rule against hearsay. Fed. R. Evid. 802. Hearsay is a statement that: (1) the declarant (*i.e.* Washington) does not make while testifying in this matter; and (2) a party (*i.e.*, Anderson) offers in evidence to prove the truth of the matter asserted (*i.e.*, that Washington told C.O. Calloway he planned to stab Anderson). *See* Fed. R. Evid. 801(c). Hearsay generally is inadmissible, and when a party seeks to rely on hearsay at summary judgment, he must show it would be admissible at trial. *Williams v. Borough of West Chester*, 891 F.2d 458, 465 n.12 (3d Cir. 1989) ("[H]earsay evidence produced in an affidavit opposing summary judgment may be considered *if* the out-of-court declarant could later present that evidence through direct testimony.") (emphasis added); *see also Jasmin v. N.J. Econ. Dev. Auth.*, No. 16-1002, 2020 WL 3411171, at *8 (D.N.J. June 22, 2020) (holding that for hearsay evidence to be considered on summary judgment, the party seeking to rely on it "must demonstrate that [he] will *be able* to reduce it to an admissible form at trial"). Hearsay *may* be admissible if it fits into an exclusion or an exception. *See* Fed. R. Evid. 801(c), (d), 802, 803, 804. However, Anderson makes no

attempt to show that an exclusion or exception applies to Washington's statement regarding his alleged plan to harm Anderson to permit consideration of it here.

A party may rely on hearsay at summary judgment if he shows the declarant's "*availability to testify*." *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 239 (3d Cir. 2016) (emphasis added). However, the "law requires more than just a remote possibility" that a hearsay declarant could later testify in court;" the party seeking to rely on hearsay instead must "show that some likelihood exists that he will appear at trial and testify." *McCoy v. City of Phila*, No. 19-1648, 2026 WL 1833976, at *6 (E.D. Pa. June 25, 2026) (citation modified). Anderson has not shown even "some likelihood" that Washington would be available to testify at trial, much less that he would appear and offer testimony consistent with Acosta's recounting of his out-of-court statement. So, this hearsay evidence which does not fit into any exclusion or exception, bolstered only by Anderson's own self-serving testimony is not enough to defeat summary judgment. *See* Fed. R. Civ. P. 56(e).

Moreover, even if a valid hearsay exception did apply to the statements in Acosta's affidavit, Anderson has not set forth sufficient evidence to permit a reasonable jury to conclude that C.O. Calloway *provoked* Washington's attack. And even if Anderson only claimed that C.O. Calloway *failed to act* despite knowing that Anderson was at risk because of the letters that he had read, "threats between inmates are common and do not, in every circumstance, serve to impute actual knowledge of a substantial risk of serious harm." *Hightower v. City of Phila.*, No. 21-4075, 2023 WL 8879761, at *7 (E.D. Pa. Dec. 22, 2023), aff'd, 130 F.4th 352 (3d Cir. 2025). Eighth Amendment liability "requires

consciousness of" such a risk. *Farmer*, 511 U.S. at 840. Anderson has not set forth sufficient evidence to show that C.O. Calloway made an actual inference of a threat to Anderson's safety when he reviewed the correspondence between Washington and "Fats" to require his claim against C.O. Calloway to proceed to trial.

## IV. CONCLUSION

Again, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Because Anderson has not met his burden to show that genuine issues of material fact exist with respect to his claims that either C.O. Jenkins or C.O. Calloway violated his constitutional rights with respect to the events surrounding Washington's attack, summary judgment is granted in Defendants' favor.

An appropriate Order follows.